IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK ALAN CHAR, #A0234438,<br><br>  Plaintiff,<br><br>vs.<br><br>MAURA TRESCH, *et al.*,<br><br>  Defendants. | CIVIL NO. 23-00402 DKW-WRP<br><br>ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT WITH LEAVE TO AMEND |

Before the Court is pro se Plaintiff Mark Alan Char's Prisoner Civil Rights Complaint. ECF No. 1. In the Complaint, Char alleges that forty-one named defendants and an unspecified number of unnamed defendants violated his rights over a seven-year period during his incarceration at the Oahu Community Correctional Center ("OCCC") and the Halawa Correctional Facility ("HCF").[1]  *Id.* Char brings this action pursuant to 42 U.S.C. § 1983 and the Americans with

---

[1] The named defendants are Maura Tresch, Richard Banner, Deane Hatakeyama, Mandy Feldt, Theresa Pray, Marieta Momii, Mahina Assily, Romey Glidewell, Leslie Mercado, Alton Larico, Jr., Elijah Hoohuli, Peter Velegas, Edward Vavosa, Barney Toyama, Brandon Skinner, Malia Anderson, Daniel Mafua, James Werner, Neil Hayase, Shannon Cluney, Scott Harrington, Lyle Antonio, Joanna White, Dovie Borges, Monica Chun, Nolan Espinda, Shari Kimoto, David Ige, Caroline Mee, Tina Agaran, Edmund Hyun, Max Otani, Tommy Johnson, Robin Matsunaga, Kauai Harrington, Francis Sequeira, Kyle Kawamata, Charles Laux, Leona Ogi, Erin Loredo, and Mr. Blue. ECF No. 1 at PageID.1–PageID.4. The unnamed defendants include "John Doe 1–100," "Jane Doe 1–100," "Doe Corporations 1–10," "Doe Partnerships 1–10," "Doe Limited Liability Corporation 1–10," and "Governmental Units 1–10." *Id.* at PageID.4.

Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. *Id.* He also asserts various claims under state law. *Id.* at PageID.23–PageID.26. After conducting the required screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court DISMISSES the Complaint with leave to amend.[2] If Char wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before November 17, 2023. In the alternative, Char may inform the Court in writing on or before November 17, 2023 that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), in which case such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).[3]

## I. STATUTORY SCREENING

The Court must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis. 28 U.S.C. §§ 1915(e)(2), 1915A(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007) ("Among other reforms, the [Prison Litigation Reform Act of 1995] mandates early judicial screening of prisoner complaints."). During this screening, the Court must dismiss any complaint, or any portion

---

[2] Char remains incarcerated at the HCF. *See* ECF No. 1 at PageID.1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A0234438"; and select "Search") (last visited Oct. 25, 2023).

[3] It appears that Char has already accrued at least one strike. *See Char v. KHON*, CIV. NO. 18-00304 LEK-KJM, 2018 WL 5284191, at *4 (D. Haw. Oct. 24, 2018) ("This dismissal may count as a 'strike' under 28 U.S.C. § 1915(g).").

thereof, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Harris v. Mangum*, 863 F.3d 1133, 1137 (9th Cir. 2017); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. BACKGROUND[4]

On October 10, 2016, Char returned to the OCCC from the hospital after being treated for sepsis.[5] ECF No. 1 at PageID.8. According to Char, upon returning to the OCCC, he was "bedridden" and "handicapped." *Id.*

Sometime during the end of 2016 or the beginning of 2017, Char was sent to the HCF's infirmary for approximately one or two weeks. *Id.* Although Char was in a wheelchair, he was not transported to the HCF in a "Handi-Van." *Id.* Instead, he was required to get up from his wheelchair and climb into a Department of Public Safety ("DPS") van. *Id.* Soon before Char returned to the OCCC, he was forced to get up from his wheelchair, move to a holding cell, and sit on a concrete bench despite a painful "bedsore injury" on his coccyx. *Id.* When Char asked for a wheelchair to transport him to the DPS van, his request was refused. *Id.*

Upon returning to the OCCC, Char was provided a wheelchair. *Id.* After Char filed grievances against Dr. Banner, nurses, and staff, however, Dr. Banner retaliated against Char by disallowing his use of the wheelchair. *Id.* at PageID.9. As a result, Char was unable to retrieve prescribed medications or go to the dining area to eat. *Id.* At a certain point, Char began eating in his cell and nurses brought

---

[4]Char's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[5]"Sepsis is the body's extreme response to an infection." Centers for Disease Control and Prevention, "Sepsis," https://www.cdc.gov/sepsis/what-is-sepsis.html (last visited Oct. 25, 2023) [https://perma.cc/U82D-5Q68].

4

Char's medications to his cell. *Id.* Char was also given a cane to walk with. *Id.* He used the cane to walk to the dining area, where he also used a chair to support himself. *Id.* At some point, adult corrections officers ("ACO") stopped the nurses from delivering Char's daily medications. *Id.*

Between February and June 2017, Char had a weekly appointment at the Queen's Medical Center's wound clinic to treat his bedsore. *Id.* For each of these visits, Char was forced to climb into a DPS van. *Id.* He was not transported in a Handi-Van. *Id.* On "several" occasions, Char missed his appointment because no DPS van was available. *Id.* at PageID.10.

Char continued filing grievances. *Id.* As a result, abusive staff members retaliated against him by "falsely [writing him] up" and sending him to the "hole." *Id.* On numerous occasions, Char had to drape himself over a food cart to move to the front of his cell where nurses would meet him with a wheelchair. *Id.*

On November 17, 2017, and September 27, 2019, Char was forced to climb into a DPS van for ophthalmologist appointments. *Id.* On an unspecified date, Char could not meet with his court-appointed counsel because ACOs refused to provide him a wheelchair. *Id.*

Char eventually moved from the hole to a general population housing module. *Id.* According to Char, because the general population housing module had stairs, he was unable to shower between October 10, 2016, and August 10,

2018. *Id.* Other inmates carried Char on their backs down the stairs so that he could use the phone and eat in the dining area. *Id.* After these inmates were written up for helping Char, *id.*, he was forced to navigate the stairs on his own, *id.* at PageID.11.

On May 23, 2018, after Char had been in the hole "for months," an unnamed prison official told Char that the warden and deputy warden were worried that he would file a lawsuit alleging that he was being housed in a cell in violation of the ADA and that he was wrongfully denied showers and recreation. *Id.* at PageID.11. Char refused to leave his cell. *Id.* Prison officials eventually tricked Char to leave his cell by telling him that he had a medical appointment. *Id.* Char was then moved to the "M-2" housing module, where Char "refused housing." *Id.* After Char "[fought] fire with fire," he was moved to a "suicide cell" in the "M-1" housing module. *Id.*

While in the suicide cell, prison officials refused Char's request to use a cane. *Id.* Char fell in his cell and injured his arm, shoulder, and back. *Id.* at PageID.12. When Char called out for help, an ACO mocked him and left him on the floor. *Id.* When the next shift began, another ACO left Char on the floor of his cell and refused to call for medical assistance. *Id.* The following day, Char was moved to a smaller cell that was "contaminated with urine all over the cell [and]

ants." *Id.* Char was not allowed to wash his hands or face, brush his teeth, take a shower, use the telephone to make legal calls, or take his daily medications. *Id.*

On May 26, 2018, Char fell while walking to refill his water bottle. *Id.* According to Char, an ACO told medical aides not to refill his water bottle for him. *Id.* Nurses arrived and returned Char to his cell. *Id.* and PageID.13. After "numerous days" in a suicide cell, Char returned to the hole. *Id.*

On August 10, 2018, Char was transferred from the OCCC to the HCF. *Id.* Again, Char was forced to climb into a DPS van. *Id.* On November 27, 2018, Char's newly appointed attorney visited the HCF's special holding unit ("SHU") to meet with Char. *Id.* Char was denied a wheelchair, and he fell while walking to meet his attorney. *Id.* Char was taken to the hospital, but this prevented him from meeting with his attorney. *Id.* Char's attorney eventually returned to the HCF, but Char again was not provided a wheelchair. *Id.* at PageID.14. When Char refused to walk, he was written up for disobeying an order. *Id.* On three other occasions, on May 13, 2021, February 24, 2023, and April 28, 2023, unnamed nurses refused to provide Char a wheelchair to meet with his attorney. *Id.*

On December 4, 2018, another ACO refused to provide Char a wheelchair. *Id.* at PageID.13. Char fell again and skinned both his knees. Id. at PageID.14.

On February 20, 2019, an ACO refused to transport Char to trial in a Handi-Van. *Id.* Upon arriving at the courthouse, the same ACO refused to unshackle

Char's legs or help him exit the vehicle. *Id.* Char fell while exiting the vehicle, injuring his chest and back in the process. *Id.* at PageID.14–PageID.15. The ACO picked up Char from the ground and slammed him into a wheelchair, injuring Char's back and buttocks. *Id.* at PageID.15. Char was eventually sent to the hospital in an ambulance for medical care. *Id.* He later returned to the courthouse in a sheriff's patrol car, not a Handi-Van. *Id.*

On March 9, 2020, Char was moved to "M-2," a general population housing module. *Id.* After filing grievances about a registered nurse for unspecified reasons, the nurse retaliated against Char by cancelling his use of a wheelchair. *Id.* This prevented Char from picking up his medications, participating in "medical recreation," and showering. *Id.* When Char attempted to walk and pick up his medications, he fell on his way back to his housing module. *Id.* The next day, Char asked the nurse to provide him with a cane, but she refused. *Id.* at PageID.16. When Char asked various prison officials how he could order his own wheelchair, Char was told that he could not do so because he did not have money in his prison trust fund account. *Id.*

On November 26, 2021, Char returned to the HCF from the Queen's Medical Center with a cane that was given to him at the hospital. *Id.* He then returned a cane that had been provided to him by prison officials at the HCF. *Id.* The next day, however, an ACO ordered Char to turn over the cane he received at

the hospital. *Id.* When Char protested, the ACO ordered Char "to give him [the] cane or face harm." *Id.* at PageID.16–PageID.17. Char complied with the ACO's directive. *Id.* at PageID.17.

On October 28, 2022, a prison official again cancelled Char's wheelchair. *Id.* This purportedly interfered with Char's ability to seek medical care and treatment. *Id.* On November 16, 2022, when Char was summoned to the medical unit for treatment, no wheelchair was provided to him. *Id.* When Char attempted to crawl to the medical unit, an ACO stopped him. *Id.*

On November 17, 2022, an ACO informed Char that nurses had summoned him for a medical appointment. *Id.* at PageID.18. Again, no wheelchair was provided to Char, and the ACO told Char that he had to walk. *Id.* Char fell while walking to the medical unit. *Id.* According to Char, this was the seventh time that he had fallen after being forced to walk without the assistance of a wheelchair or cane. *Id.* When Char attempted to crawl, an ACO stopped him. *Id.*

On April 28, 2023, Project Vision Hawaii came to the HCF to perform eye examinations for inmates. *Id.* A nurse transported Char in a wheelchair to a vehicle that would take him to the gym where the examinations were being performed. *Id.* When Char told two ACOs that he needed to be transported in a Handi-Van, Char was returned to his cell without undergoing an eye examination. *Id.* at PageID.19.

According to Char, since August 10, 2018, he was allowed to shower twice while he was living in the "M-2(B)" housing module. *Id.* While Char was housed in M-2(B), he was also allowed "medical recreation" only twice between March 9, 2020, and May 6, 2020. *Id.* Although Char had standing appointments at the medical unit twice each day beginning on November 3, 2022, he did not attend any of these appointments because he was not provided a wheelchair. *Id.*

While he was at the OCCC, a prison official prevented Char from receiving grievances, refused to process Char's grievances, retaliated against him by placing him on a "grievance restriction," and worked with another prison official to "steal" and "destroy" Char's grievances. *Id.* at PageID.21. Other prison officials took similar actions at the HCF. *Id.*

Char commenced this lawsuit by signing the Complaint on September 20, 2023. *Id.* at PageID.27. In the Complaint, Char sets forth the "Facts" in paragraphs numbered from 48 to 154. *Id.* at PageID.8–21. Beginning with paragraph 155, Char sets forth twelve counts for "deliberate indifference to my serious medical needs" (Count I), "deliberate indifference proscribed by the Eighth Amendment" (Count II), retaliation (Count III), conspiracy (Count IV), intentional infliction of emotional distress (Count V), negligence (Count VI), negligent infliction of emotional distress (Count VII), assault (Count VIII), robbery (Count IX), "42 U.S.C. section 12101–12213 – ADA violations" (Count X), "Elderly

10

Abuse HRS 28-94(A) 2003" (Count XI), and "6th Amendment violation – constitutional right to counsel" (Count XII). *Id.* at PageID.21–PageID.27. In Count I, Char states that he "incorporates all of the allegations contained in paragraphs (1) through (154)[.]" *Id.* at PageID.21. Each subsequent Count also incorporates by reference all of the Complaint's preceding paragraphs. *See id.* at PageID.22–PageID.27. Char seeks declaratory and injunctive relief, unspecified damages, and costs. *Id.* at PageID.27. On October 17, 2023, the Court granted Char's application to proceed in forma pauperis by a prisoner. ECF No. 7.

### III.  DISCUSSION

A.   **Shotgun Pleading**

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, a complaint must allege enough facts to provide both "fair notice" of the claim asserted and "the grounds upon which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Under Rule 10, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

11

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The "most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. In another type of shotgun pleading, the plaintiff asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. Shotgun pleadings are unacceptable. *See White v. Sacramento Police Dep't*, No. 2:21-cv-02211-JAM-DB, 2022 WL 2052596, at*3 (E.D. Cal. June 7, 2022).

Here, the Complaint is a shotgun pleading both because (1) each count incorporates all of the Complaint's preceding paragraphs, and (2) each count refers to all the Defendants without specifying what each did or failed to do. *See* ECF No. 1 at PageID.21–PageID.27; *see also Melrose Place Holdings v. Socotra Opportunity Fund, LLC*, Case No. CV 22-01329-MWF (PDx), 2022 WL 3013226,

12

at *5 (C.D. Cal. May 31, 2022) ("[T]he [pleading] squarely falls into the category of an impermissible shotgun pleading. The [pleading] uses the omnibus term "Defendants" to allege misconduct without differentiation, and each and every claim incorporates by reference all preceding paragraphs without specificity."). The Complaint is therefore DISMISSED with leave to amend. *See Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2020 WL 4732145, at 10 (D. Ariz. Aug. 14, 2020) (dismissing shotgun pleading where "it was extremely difficult to identify which of the Defendants did what and how Plaintiffs were injured as a result, let alone what legally cognizable theory of relief Plaintiffs are articulating").

If Char decides to file an amended pleading, in each count he must explain: (1) the law or constitutional right Plaintiffs believe was violated; (2) the name of the party who violated that law or right; (3) exactly what that party did or failed to do; (4) how that action or inaction is connected to the violation of the law or any constitutional right; and (5) the exact injury Plaintiffs suffered as a result of that conduct. Char must also consider the following legal standards.

### B. Improper Joinder

A party asserting a claim may join, as independent or alternative claims, as many claims as it has against an opposing party. Fed. R. Civ. P. 18. "To name different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20, governing joinder of parties." *Weeks v. Espinda*, Civil No. 10-00305 JMS-KSC, 2010 WL 2218631, at *3 (D. Haw. June 2, 2010). Rule 20(a)(2) allows joinder of defendants only if the following two requirements are met: (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2)(A)–(B); *Stribling v. Tobias*, 690 F. App'x 972, 973 (9th Cir. 2017). Unrelated claims involving different defendants belong in different suits. *See What v. Honolulu Police Dep't*, 2014 WL 176610, at *4 (D. Haw. Jan. 13, 2014).

Here, Char asserts a variety of claims based on events that allegedly occurred at two different correctional facilities over the course of nearly seven years. *See* ECF No. 1. These claims cannot proceed in a single action unless they are permitted by either Rule 18 or Rule 20. *See Godoy v. Brown*, Case No. 18-cv-06650-HSG, 2019 WL 6327217, at 2 (N.D. Cal. Nov. 26, 2019) (dismissing pleading alleging violations over the course of several years at more than one

prison). Char may state a single claim against a single defendant. Pursuant to Rule 18, Char may then add any additional claims to his action that are against the same defendant. Char may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2).

Char may not pursue a combination of unrelated claims in a single suit. *See Char v. Kaiser Hosp.*, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate actions."). Char may, however, raise any unrelated claims in a separate action or actions. *See D'Agirbaud v. Kam*, 2020 WL 3258408, at *5 (D. Haw. June 16, 2020) (explaining that dismissing complaint for misjoinder allowed plaintiff "to decide which related claims he will pursue in *this* action, and which claims he will bring in a new action"). Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined.

C.     **Statute of Limitations**

The Complaint includes factual allegations dating back to 2016—that is, seven years ago. *See* ECF No. 1.

Although Section 1983 does not contain its own statute of limitations, "[a]ctions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions." *Knox v. Davis*, 260 F.3d 1009,

1012–13 (9th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). In general, the statute of limitations for personal injury actions in Hawaii is two years. See Haw. Rev. Stat. § 657-7; *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019).

Like 42 U.S.C. § 1983, "Title II of the ADA does not contain an express statute of limitations." *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015). If a claim arises under the ADA, the Court borrows the statute of limitations applicable to the most analogous state-law claim. *Id.* Hawaii's two-year statute of limitations for personal injury actions governs claims brought pursuant to Title II of the ADA. *See Imamoto v. Soc. Sec. Admin.*, Civil No. 08-00137 JMS/KSC, 2008 WL 4657811, at *4 (D. Haw. Oct. 21, 2008). If a Title II claim is made possible by the ADA Amendments Act of 2008, however, then the four-year statute of limitations under 42 U.S.C. § 1658 applies. *Rohr v. Crime Victims Comp. Comm'n*, CIV. NO. 16-00162 LEK-RT, 2019 WL 3294798, at *5 (D. Haw. July 22, 2019), *aff'd*, No. 20-15051, 2022 WL 500928 (9th Cir. Feb. 18, 2022), *and aff'd*, No. 20-15051, 2022 WL 500928 (9th Cir. Feb. 18, 2022).

## IV.  LEAVE TO AMEND

The Complaint is DISMISSED with leave to amend. Char must file any amended pleading on or before November 17, 2023. Char may not expand his claims beyond those already alleged herein or add new claims, without explaining

how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Char must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

### V.  28 U.S.C. § 1915(g)

If Char fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, as described above, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  **CONCLUSION**

(1) The Complaint, ECF No. 1, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

(2) Char must file any amended pleading on or before November 17, 2023.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Char may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Char may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Char a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: October 26, 2023 at Honolulu, Hawaiʻi.



/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

_Mark Alan Char v. Maura Tresch, et al._; Civil No. 23-00402 DKW-WRP;
**ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT WITH LEAVE TO AMEND**